

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

Chambers of                                                                  101 West Lombard Street
J. Mark Coulson                                            Baltimore, Maryland 21201
U.S. Magistrate Judge                            MDD_JMCChambers@mdd.uscourts.gov
Phone: (410) 962-4953
Fax: (410) 962-2985

December 21, 2016

LETTER  TO ALL COUNSEL OF RECORD

Re: _Tammy Lee Dobrzyn  v. Commissioner, Social Security Administration_
     Civil No. 15-cv-3086-JMC

Dear Counsel:

On October 11, 2015, Plaintiff, Tammy L. Dobrzyn, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Title XVI Social Security Income ("SSI") benefits. (ECF No. 1.)  I have considered the parties' cross-motions for summary judgment (ECF Nos. 14, 17) and I find that no hearing is necessary.  Loc. R. 105.6 (D. Md. 2016).  This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards.  See 42 U.S.C. § 405(g); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  Because I find it necessary to clarify one area of the ALJ's discussion, I will  deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Dobrzyn initially applied for SSI benefits on April 18, 2011, alleging disability as of July 2009, based on degenerative disc disease. (Tr. 13.)  That claim was initially denied on October 4, 2011, and then, upon reconsideration, it was denied again on April 9, 2012. (Tr 13.)  On May 29, 2012, Ms. Dobrzyn requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 13.)  On April 29, 2014, a video hearing was held before ALJ Marc Mates, during which testimony was offered by the claimant and a vocational expert, Thomas Beale, M.D. (Tr. 27-48.) Following that hearing, on June 5, 2014, the ALJ issued a written opinion, in which he concluded that Ms. Dobrzyn was not disabled within the meaning of the Social Security Act during the relevant time frame.  (Tr. 13.)  Thereafter, the

Appeals Council denied Ms. Dobrzyn's request for review, making the ALJ's decision the final reviewable decision of the Agency.  (Tr. 1-4.)

As mentioned above, I must uphold the ALJ's findings if they are supported by substantial evidence and were reached through correct legal standards. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." Id. (internal citations and quotations omitted). And in accordance with this standard, "[I] do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id.

In making his decision on Ms. Dobrzyn's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920 (1992). Pursuant to those regulations, the "ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to [her] past work, and (5) if not, whether [she] can perform other work."  Hunter v. Sullivan, 993 F.2d 31, 34–35 (4th Cir. 1992) (internal citations omitted).  "If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step. Through the fourth step, the burden of production and proof is on the claimant." Id. (internal citations omitted). If, however, the claimant reaches step five, then "the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." Id. (internal citations omitted).

In this case, the ALJ found that Ms. Dobrzyn had not engaged in "substantial gainful activity" since April 18, 2011, the date of her DIB application. Next, the ALJ determined that Ms. Dobrzyn's degenerative disc disease, which she suffered from through her date last insured, constituted a "severe impairment" under the regulations. (Tr. 15.) The ALJ also discussed, in detail, several other impairments that were in the record and alleged by Ms. Dobrzyn. But the ALJ determined that those impairments, which included Ms. Dobrzyn's "well-controlled asthma, sinusitis, dyslipidemia, a left ankle sprain, and very minor right hip osteoarthritis," were non-severe. (Tr. 15.)

Ultimately, the ALJ found that Ms. Dobrzyn did not have an impairment, or a combination of impairments, that met or medically equaled any of the impairments listed set forth in 20 C.F.R Part 404, Subpart P, Appendix 1.  (Tr. 15-21.)  Then, "after careful consideration of the entire record," the ALJ found that Ms. Dobrzyn had the residual functional capacity (RFC) to "perform sedentary work as defined in 20 C.F.R. 416.967(a), insofar that she is able to lift/carry 10 pounds occasionally and less than 10 pounds frequently, stand/walk about 2 hours, and sit about 6 hours in an 8-hour workday. She is able to perform postural activities, including balancing and stooping, occasionally. The claimant requires the opportunity to alternate

between standing and sitting as needed, while remaining on task." (Tr. 16.)  Finally, the ALJ, relying on vocational expert testimony, determined that, while Ms. Dobrzyn could not perform her past relevant work, she could perform other representative jobs that existed in significant numbers in the national/regional economy. (Tr. 18-20.)

On appeal, Ms. Dobrzyn raises two primary issues. First, she contends the ALJ "erred in his evaluation of the medical opinion evidence, his assessment of medical impairment listings, in violation of 20 C.F.R. § 416.920, et seq., his assessment of Residual Functional Capacity in violation of 20 C.F.R. § 416.927, et seq., and his assessment of the claimant's credibility and exertional and non-exertional limitations." And second, she contends that the ALJ "erred in his evaluation of the Vocational Expert opinion evidence, did not meaningfully consider the favorable and relevant medical and vocational evidence." Because Ms. Dobrzyn incorporates a number of arguments into each of these two issues, I have organized my discussion of her claims into individual parts.


*- ALJ's Consideration of the Medical Evidence -*

At step two of the analysis, the ALJ found that Ms. Dobrzyn's asthma, sinusitis, left ankle instability, and right hip osteoarthritis did not constitute severe impairments because "they cause no more than minimal limitations, have not met the durational requirement, and/or are not fully supported by the record." (Tr. 15.) Ms. Dobrzyn disagrees with this finding, arguing that such conditions have been found to be severe and that the ALJ failed to "properly consider the medical evidence of record."[1]

 "In order to be 'severe', an impairment must significantly limit one's ability to do basic work activities. Schmidt v. Astrue, No. PWG-07-3325, 2009 WL 3054020, at *1 (D. Md. Sept. 17, 2009) (citing 20 C.F.R. § 404.1521(a)). "An impairment is not severe if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Id. (internal citations omitted). And, of particular relevance to this case, "a mere diagnosis says nothing about the severity of the condition."  Corcoran v. Astrue, No. CIV. SKG-08-913, 2009 WL 3100350, at *15 (D. Md. Sept. 22, 2009).

---

[1] Ms. Dobrzyn also suggests that her general anxiety disorder constituted a severe impairment. Although the ALJ did not address this condition in his findings, I find that there is substantial evidence in the record that this condition was non-severe. Ms. Dobrzyn alleged that she endured daily panic attacks lasting from five to ten minutes at a time. (Tr. 43.) But the record does not provide any support for this claim. Instead the record regularly documents no indication of anxiety symptoms (Tr. 524—530, 539-564), and in two instances her anxiety was documented as "ok" and that she was not suffering from any panic attacks. (Tr. 532-534.) Moreover, Ms. Dobrzyn has not pointed to anything in the record that would to support her claim that her anxiety was severe.

It is worth noting from the outset that while the ALJ's discussion of why these conditions were not severe impairments was, to some extent, cursory, Ms. Dobrzyn provides little in the way of discussion or citations to the record as to how these conditions were, in fact, severe and how such severity had a functional impact on her ability to work. Nonetheless, the ALJ's determination that these conditions were not severe is supported, at least in part, by the medical record in this case. Specifically, the ALJ found that Ms. Dobrzyn's asthma was "well-controlled," which is consistent with various portions of the record describing the asthma as being controlled by her prescribed medications. (Tr. 482-497, 509.) And while there was a reported asthma attack in November 2009 and occasional shortness of breath in 2013, Ms. Dobrzyn does not explain how these isolated reports render her condition "severe" under the regulations. Moreover, as for the ankle instability and the osteoarthritis of the hip, the record provides that Ms. Dobrzyn complained of these conditions on several occasions. However, at several follow up medical consults, Ms. Dobrzyn was determined to be "walking without difficulty" and her ankle joint and hip appeared to be "normal." (Tr. 434, 438, 474.) [2]

Furthermore, even if the ALJ had erred in his evaluation of any of these impairments at Step Two, such error would be harmless.  Because Ms. Dobrzyn made the threshold showing that her back pain constituted a severe impairment, the ALJ continued with the sequential evaluation process and properly considered all of the impairments, both severe and non-severe, that significantly impacted her ability to work.  *See* 20 C.F.R. §§ 404.1523, 416.923. Therefore, any Step Two error does not necessitate remand.

### *- ALJ's Evaluation of Severity of Spinal Condition –*

"At step three of the sequential evaluation, the 'listed impairments' step, the ALJ must determine if the claimant's impairment(s) meet or equal one or more of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1." Boone v. Colvin, No. CV ADC-15-2896, 2016 WL 6462185, at *6 (D. Md. Oct. 31, 2016). At this step, "[w]here a claimant can show that her condition meets or equals the listed impairments, the claimant is entitled to a conclusive presumption that she is disabled within the meaning of the Social Security Act." Id. However, "the burden of proof is on the claimant to show that she meets all of the specified medical criteria." Id.

Here, the ALJ determined at step three that Ms. Dobrzyn's degenerative disc disease did not constitute "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (Tr. 15.) Ms. Dobrzyn takes issue with this

---

[2] I am unable to find significant information in the record detailing Ms. Dobrzyn's symptoms associated with her sinusitis, though a portion of the record does indicate that she had "normal" and clear sinus and lungs. (Tr. 458.)

finding by suggesting that the ALJ "failed to properly evaluate the claimant's severe disorders of the spine or obtain updated medical opinion evidence to determine meeting or equivalence of Listing 1.04."

While it is true, as Ms. Dobrzyn points out, that the ALJ did not identify or discuss Listing 1.04 ("Disorders of the spine"), "the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments. Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." Ketcher v. Apfel, 68 F. Supp. 2d 629, 645 (D. Md. 1999). And, as I explain below, this duty was not triggered because Ms. Dobrzyn did not meet her burden of showing how that listing was at issue.

In Vogel v. Comm'r, Soc. Sec., this Court stated that simply because the claimant was determined to have a severe degenerative disc disease, for purposes of step two of the sequential evaluation, such a determination did not necessarily trigger the duty to address Listing 1.04. No. CIV. GLR-13-911, 2014 WL 722105, at *3 (D. Md. Feb. 24, 2014). The Court explained, "[w]hile Listing 1.04 requires the claimant to demonstrate a disorder of the spine, such as degenerative disc disease, the claimant must also show that the disorder results in compromise of a nerve root or the spinal cord. Listing 1.04 contains three sub-sections of criteria. The claimant must meet the criteria in at least one sub-section to satisfy the impairment. The 1.04(A) criteria include, evidence of nerve root compression... The criteria in 1.04(B) and 1.04(C) include evidence of spinal arachnoiditis and lumbar spinal stenosis, respectively. Id. And because the claimant in that case did not provide any evidence that would satisfy the criteria of any of the 1.04 subsections, the Court reasoned, the ALJ was under no duty to address that particular listing.  No. CIV. GLR-13-911, 2014 WL 722105, at *3 (D. Md. Feb. 24, 2014). See also Boone at *6 (all the relevant "criteria must be met in order for a claimant to show that her impairment matches a listing; in other words, an impairment that exhibits only some of the criteria, no matter how severe, does not qualify"). Similar to the holding in Vogel, I find that the record does not contain, nor does Ms. Dobrzyn even allege, medical evidence that her disc condition would have met any of the criteria under Listing 1.04. Accordingly, I find that the ALJ was not required to address that listing.

*- Claims of Mischaracterization -*

In further support of her various arguments that the ALJ improperly evaluated her impairments, Ms. Dobrzyn also contends that the ALJ "mischaracterized various medical evidence cited to in the record of his decision, which significantly downplayed the severity of [her] impairments." Specifically, she contends that the ALJ mischaracterized evidence relating to her gait, the "mild-moderate MRI findings," her pain control medications, and a statement she made about her unwillingness to

undergo injections or surgery for her back. I find, however, that the characterizations Ms. Dobrzyn is referring to are supported by the record.

First, the ALJ reviewed the medical record and highlighted those portions that discussed Ms. Dobrzyn's gait. Indeed, in his findings he noted the medical examination documenting her "stiff gait," (Tr. 17, 512), he acknowledged the clinical findings regarding the decreased lumbar range of motion and "limping gait," and he went onto highlight the "contemporaneous primary care office visits not[ing] a normal gate." (Tr. 17, 623-629.) Thus, the ALR considered what appears to be all of the relevant "gait" evidence, both favorable and unfavorable to Ms. Dobrzyn's claim, and ultimately concluded that her conditions did not meet or medically equal the requirements of a listed impairment. It is not for this Court to reweigh that evidence. Rather the question is whether the ALJ's conclusion is supported by substantial evidence, and I find that it was.

Next, the ALJ, contrary to Ms. Dobrzyn's suggestion, accurately described the MRI reports of her lumbar spine as showing "only mild to moderate" narrowing. Not only is this description consistent with medical reports from 2013 that described spinal condition in a similar way (See Tr. 383, 577, 17), but Ms. Dobrzyn, again, does not cite to any portion of the record that would dispute that description.[3]

Next, Ms. Dobrzyn takes issue with the ALJ's finding of "adequate pain relief" and an absence of side effects from the pain medication she was taking. While she claims that there were instances where the pain medications seemed to help, she goes onto argue that such instances were isolated and that the medications had adverse side effects and did little to alleviate her pain. However, the record supports the ALJ's finding in that it shows that the pain medication was repeatedly documented as being effective, and there is little to no medical evidence showing persistent adverse side effects from taking the medications. (Tr. 540-573, 483-498.)

Finally, Ms. Dobrzyn takes issue with the ALJ's statement that she did not take injections or undergo surgery because such treatments did not work for her brother's back pain. But such criticism is unavailing as the ALJ was actually quoting from a September 2011 medical report where the treating doctor, in recording Ms. Dobrzyn's history of illnesses, wrote: "She reports that she has avoided injections or surgery because these procedures did not work for her brother who has back pain." (Tr. 511.)

---

[3] Ms. Dobrzyn cites to pages 683-740 of the record in support of this claim. While it is not clear exactly which portion of this large range of the record that she is referring to, I find that included in this range are several clinical findings which support the ALJ's conclusions. Specifically, the medical reports on pages 715-717 state that MRI of her spine show there was a "central disc protrusion" (or "mild bulging"), but there was "no significant foraminal narrowing."

In sum, I am unpersuaded by Ms. Dobrzyn's allegations that the ALJ mischaracterized the record in support of his ultimate decision, as I believe that each of these challenged findings was supported by substantial evidence.

*- ALJ's RFC Assessment –*

Next, Ms. Dobrzyn notes that the ALJ "further committed reversible error in his evaluation of [her] symptoms and RFC determination." In objecting to the ALJ's RFC finding, Ms. Dobrzyn specifically claims that the ALJ erred in his assessment of her credibility, that he did not give proper weight to her radiating back pain, that he did drew unsupported conclusions about her ability to work, and that he failed to give proper weight to the opinions of treating physicians, in violation of the treating physicians rule.

As it relates to Ms. Dobrzyn's credibility, the ALJ found that her subjective statements concerning the intensity, persistence, and limiting effects of her symptoms were not supported by the record to the extent she alleged. In support of this finding, the ALJ cited the "limited abnormalities on clinical exam" and mild to moderate diagnostic findings (Tr. 18, 400-406, 429-444). He also pointed to the "conservative treatment" that Ms. Dobrzyn underwent, which emphasized pain medication while incorporating only minimal physical therapy, and the fact that Ms. Dobrzyn was unwilling to undergo injections or surgery because, apparently, such courses of treatment did not alleviate her brother's back pain. I find that these considerations were sufficient to call into question Ms. Dobrzyn's credibility, as they are not only supported by the record but they contradict some of her claims about the severity and persistence of her symptoms.

Furthermore, contrary to Ms. Dobrzyn's claims, the ALJ did consider and weigh her pain symptoms in his assessment of her ability to work. (Tr. 18.) He noted her testimony about her use of a walker and cane, her statements about not being able to sit or stand for extended periods of time, and her inability to lift significant wait or bend at her waist.  (Tr. 16-18.) However, for the reasons explained above, the ALJ found that Ms. Dobrzyn's allegations were not supported by the medical record in this case. Ultimately the ALJ's conclusion about the limited work that Ms. Dobrzyn could perform was supported by the medical record and, in part, by the assessment of Dr. Beale.

Finally, Ms. Dobrzyn claims that the ALJ violated the 'treating physician rule' by failing to give proper weight to the medical opinions of Dr. Moinuddin, Ms. Dobrzyn's primary care and treating physician, and Dr. Barrish, who examined the claimant at the request of the Social Security Commissioner.

After summarizing the medical opinion and assessment of Dr. Moinuddin, who concluded the claimant's condition warranted significantly greater physical limitations than those that were found in this case, the ALJ went onto discount that opinion, stating:

This opinion has been afforded little weight, as it is inadequately supported by the doctor's own examination findings and inconsistent with the weight of the evidence of the record as a whole. The undersigned also notes that Dr. Moinuddin did not begin to treat the claimant until April 2013, more than 3 years after the date he indicates the assigned limitations first applied. (Tr. 18.)

Then, the ALJ discussed the consultative examination of Dr. Barrish, who also opined that Ms. Dobrzyn's condition resulted in greater physical limitations (albeit to a lesser extent than those found by Dr. Moinuddin) than those found by the ALJ; though Dr. Barrish did state that Ms. Dobrzyn was able to sit for 6-8 hours per day and stand/walk for 1-2 hours per day, which was consistent with the ALJ's ultimate findings. The ALJ, however, went onto assign only "partial weight" to that opinion, noting that Dr. Barrish's findings "do not support a total inability to engage in postural maneuvers or lift or carry no weight frequently and no more than 5 pounds occasionally." (Tr. 18.) In sum, the ALJ rejected in its entirety Dr. Moinuddin's opinion, while only accepting the portion of Dr. Barrish's opinion about Ms. Dobrzyn's ability to sit, stand and walk.

"Under the treating physician rule, an ALJ must generally give more weight to a treating physician's opinion. <u>Boone</u>. at *4 (citing 20 C.F.R. § 404.1527(c)(2)). "However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight. <u>Id</u>. (citing <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996)). There, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." <u>Id</u>. (citing <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001). "Moreover, the ALJ is never required to give controlling weight to a treating physician's opinion on the ultimate issue of disability." <u>Daniels v. Colvin</u>, No. BPG-15-2085, 2016 WL 1211759, at *1 (D. Md. Mar. 28, 2016) (citing 20 C.F.R. § 404.1527(d)(1).

While it is possible that the ALJ was permitted to discount these medical opinions, the key consideration here is whether the ALJ did so while providing an adequate and sufficiently specific explanation as to why. "When denying an application, the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." <u>Fox v. Colvin</u>, 632 F. App'x 750, 756 (4th Cir. 2015 (citing 61 Fed.Reg. 34,490, 34,492 (July 2, 1996). And, "[i]f a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding what weight to give the opinion: the length and frequency of treatment relationship, the nature and extent of treatment relationship, supportability, consistency, specialization, and any other factors which tend to support or contradict the opinion." <u>Daniels</u>. at *1 (citing 20 C.F.R. §§ 404.1527(c)(1-6)). "An ALJ need not apply these factors in a mechanical fashion, so

long as the ALJ articulates the reasoning behind the weight accorded to the opinion." Id. (citing Carter v. Astrue, 2011 WL 3273060, at *6 (D. Md. July 27, 2011).

Here, the ALJ does not provide specific explanations as to why he did not accept the opinions of these two physicians, other than the cursory statements that such opinions were inconsistent with the findings of the two physicians and with the medical evidence as a whole, and the observation that the treatment relationship was relatively recent and post-dated the onset of the limitations period Such a conclusory analysis does not give this Court an opportunity to conduct any meaningful review of whether those medical opinions were properly weighed. Therefore, upon remand, the ALJ should give a more in depth explanation of why he did not accept these two medical opinions.  See Fox v. Colvin, 632 F. App'x 750, 756 (4th Cir. 2015) (this Court held that ALJ's explanation for not accepting the opinion of the treating physician was insufficient, where the ALJ merely stated that the treating physician's findings were "not well[-]supported by the medical record").

*- ALJ's Evaluation of Vocational Expert Opinion Evidence –*

Lastly, Ms. Dobrzyn contends that the ALJ committed numerous errors in his evaluation of the opinion of Dr. Beale, the vocational expert. Taking issue with the second hypothetical posed to Dr. Beale, which incorporated the medical opinion of Dr. Moinuddin, Ms. Dobrzyn claims that the ALJ erred in not adopting Dr. Beale's testimony about this hypothetical. As the Defendant notes, however, this is merely a reiteration of her prior argument that the ALJ should have adopted the medical opinion of Dr. Moinuddin, her treating physician. Therefore, I decline to readdress this issue, other than to note that upon remand the ALJ's more thorough explanation of why he did not endorse Dr. Moinuddin's medical opinion will shed light on this issue.

Ms. Dobrzyn next claims that the ALJ erred in accepting Dr. Beale's testimony regarding the first hypothetical question—a question that posed limitations consistent with the RFC assessment—because Dr. Beale's responses, she claims, were inconsistent with the Dictionary of Occupational Titles (DOT). For instance, she states that the cashier and inspector occupations that Dr. Beale opined that she could perform, were not sedentary in nature. However, contrary to her assertion, these two jobs are classified as sedentary work. Holcom v. Barnhart, 79 F. App'x 397, 399 (10th Cir. 2003); DICOT 529.666-014.

She also argues that the cashier and telephone solicitor jobs were SVP-3 semi-skilled jobs and the ALJ "did not specifically note in his hypothetical and/or findings in his decision that the claimant could perform work at any level above unskilled (SVP 1 or 2)." But, as the State points out, the RFC nor the hypothetical posed to Dr. Beale contained any specified skill limitations. Thus, it is not clear to the Court why Dr. Beale's testimony was erroneous if there was no skill limitation in place.

Alternatively, Ms. Dobrzyn argues that even the hypothetical were to allow her to perform work at all skill levels, the medical evidence of record would not support the RFC assessment, citing specifically her limited work experience, limited transferrable skills and non-exertional limitations. I disagree with her assessment of the record.  She worked for 15 years as a waitress, a semi-skilled SVP-3 job, during which time, Dr. Beale noted, she would have gained sufficient experience and transferable skills. Moreover, as is the case with the majority of her contentions, Ms. Dobrzyn does not provide in-depth analysis or citations to the record or any authority that would support this claim.

Ms. Dobrzyn further notes that Dr. Beale's "testimony and the ALJ's hypothetical presented a clear inconsistency with regard to the sit/stand option at will." But, as this Court has previously said, "the fact that the DOT does not mention a sit/stand option does not mean that VE testimony about a sit/stand option presents a conflict, discrepancy, or inconsistency with the DOT." Brown v. Comm'r, Soc. Sec., No. CIV. JFM-13-2427, 2014 WL 1761604, at *3 (D. Md. Apr. 29, 2014). Thus, it is not necessarily an error that the ALJ posed a hypothetical to Dr. Beale that included the limitation of "sit/stand as needed," and Dr. Beale's answer included jobs that the DOT does not indicate could be accomplished with a sit/stand option.

Ms. Dobrzyn notes that two of the three jobs identified by Dr. Beale, inspector and telephone solicitor, generally cannot be performed standing up. However, she provides no authority for this claim, and this Court has previously recognized that a sit/stand option does not automatically preclude sedentary work. Purvey v. Colvin, No. TMD 14-3361, 2016 WL 1089421, at *9 (D. Md. Mar. 21, 2016).

For the reasons set forth herein, the cross motions for summary judgment (ECF Nos. 14, 17) are DENIED, the Commissioner's judgment is reversed and the case is remanded in order for the ALJ to give a more detailed explanation as to why he discounted the medical opinions of Dr. Barrish and Dr. Moinuddin.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge